## UNITED STATES DISTRICT COURT FOR
## DISTRICT OF COLUMBIA

NASIR A SHAH,

    and

SHAH INVESTMENT GROUP LLC,

       *Plaintiffs,*

    *v.*

DP CAPITAL LLC,
D/B/A WASHINGTON CAPITAL PARTNERS,
  SERVE:  Russell Drazin, Esq.
  4400 Jenifer Street, NW, Suite 2
  Washington, DC 20015

WCP FUND I LLC,
  SERVE:  CORPORATION SERVICE COMPANY
  1090 Vermont Avenue, NW
  Washington, DC 20005

WCP 4910 GEORGIA AVE NW LLC,
  SERVE:  CORPORATION SERVICE COMPANY
  1090 Vermont Avenue, NW
  Washington, DC 20005

4910 GEORGIA AVE HOLDINGS LLC
  SERVE:  Mel Melaku Negussie, Registered Agent
  1629 K St, NW, Suite 300
  Washington, DC 20006

COLOMA RIVER HOLDINGS LLC,
A/K/A. COLOMA RIVER CAPITAL
  SERVE:  Chapman Paret
  1140 3rd St, NE
  Washington, DC 20002

CHARLES PAXTON PARET,
  SERVE:  340 1st St
  Berryville, VA 22611

Case No.: 1:23-cv-1102

MEL MELAKU NEGUSSIE,
  SERVE:  1629 K St, NW, Suite 300
  Washington, DC 20006

     and

DISTRICT TITLE, A CORPORATION,
  SERVE:  CORPORATION SERVICE COMPANY
  1090 Vermont Avenue, NW
  Washington, DC 20005

     *Defendants.*

## COMPLAINT

COME NOW Plaintiffs SHAH INVESTMENT GROUP LLC ("SIG") and NASIR A SHAH ("Shah") (collectively, "Plaintiffs"), by counsel, and hereby file this Complaint against Defendants DP CAPITAL LLC, WCP FUND I, LLC, WCP 4910 GEORGIA AVE NW LLC, 4910 GEORGIA AVE HOLDINGS LLC, COLOMA RIVER HOLDINGS LLC, CHARLES PARET, MEL MELAKU NEGUSSIE, and DISTRICT TITLE, A CORPORATION (collectively, "all Defendants"), and in support thereof, provides as follows:

## INTRODUCTION

This case is one of coordinated acts by the defendants to induce Plaintiffs to purchase three condominium units for the agreed price of $545,000 within a proposed residential development to be located at 4910 Georgia Ave, NW. At the time this purchase was made (2020), there was an intention by the developer, 4910 Georgia Ave Holdings LLC, to hold and convert the purchase funds without ever transferring title of the units to Plaintiffs. In fact, 4910 Georgia Ave Holdings LLC and its associated agents used those same funds ($545,000) as the closing costs for obtaining a loan on the property, which later became the subject of a foreclosure by Washington Capital Partners and its associated entities after the loan allegedly defaulted.

This foreclosure occurred despite the Defendants' knowledge of the Plaintiffs' purchase of the condominium units as a stand-alone property interest, not as an "investment" in the corporate structure of 4910 Georgia Ave Holdings. The appropriate remedy for this Court is to affirm that the Plaintiffs hold legal title through their condominium purchase, while sanctioning Defendants for their dishonest conduct. Alternatively, Plaintiffs are victims of both fraud and breach of fiduciary duty and should be reimbursed for the lost value of the funds, as well as all associated costs. Finally, the Defendants should disgorge any funds which they illegally converted and/or utilized.

## PARTIES & JURISDICTION

1.      Plaintiff NASIR A SHAH ("Shah"), is an individual residing in Maryland, who funded the purchase of three condo units of the subject property as an individual and on behalf of his holding company, Shah Investment Group LLC.

2.      Plaintiff SHAH INVESTMENT GROUP LLC ("SIG") is a limited liability company incorporated in Virginia, which was used by Shah in the purchase of the three condo units to be located on the subject property. Shah, a resident of Maryland, is the sole member of SIG.

3.      Defendant DP CAPITAL LLC ("DP Capital"), is a Virginia limited liability, also known as "Washington Capital Partners," with a principal place of business at 8401 Greensboro Drive, Suite 960, McLean, VA, 22102. Based on information available to the Plaintiffs, Daniel Huertas, a resident of Virginia, is the only member.

4.      Defendant WCP FUND I, LLC ("WCP Fund I"), is a Delaware limited liability company that engages in a lending business in the District of Columbia and is a related company to Washington Capital Partners, with a principal place of business at 2815 Hartland Road, Suite

200, Falls Church, VA 22043.  Based on information available to the Plaintiffs, Daniel Huertas, a resident of Virginia, is the only member.

5.      Defendant WCP 4910 GEORGIA AVE NW LLC ("WCP 4910 Georgia Ave") is a District of Columbia limited liability company used by WCP Funds I to develop real estate, namely the subject property in this matter. It has its principal place of business at 2815 Hartland Road, Suite 200, Falls Church, VA 2204. Based on information available to the Plaintiffs, the sole member of this entity is Victoria Junkins, a resident of Virginia.

6.      Defendants DP Capital/Washington Capital Partners, WCP Fund I, WCP 4910 Georgia Ave, and other related companies under DP Capital will hereafter be collectively referred to as the "WCP Entities" or "WCP."

7.      Daniel Huertas ("Huertas") is listed as the Chief Executive Officer of Washington Capital Partners on its website and controls all of the WCP Entities.

8.      Russell Drazin is a lawyer and the managing member of the law firm Pardo Drazin Holdings LLC a/k/a Pardo Drazin LLC (collectively, "Drazin"). Drazin has served as legal counsel for the WCP Entities and other financers of the subject property since at least 2018.

9.      Defendant 4910 GEORGIA AVE HOLDINGS LLC ("4910 Georgia Ave Holdings" or the "Developer") is a District of Columbia corporation with a principal place of business at 1629 K St, NW, Suite 300, Washington, DC 20006. It is the original developer of the project at 4910 Georgia Avenue, NW, Washington, DC, and sold condominium units to Shah in July 2020. Based on information available to the Plaintiffs, Defendants Paret, a resident of Virginia, and Defendant Negussie, a resident of Washington, DC are the members of this LLC.

10.     Defendant COLOMA RIVER HOLDINGS LLC ("Coloma River") is a capital investment firm with a principal place of business at 1120 Congress St, NE, Washington, DC

20002, which holds an investment in the Developer. Based on information available to the Plaintiffs, Defendant Paret is the sole member of this LLC.

11.     Defendant CHARLES PARET ("Paret") is an individual that resides at 1120 Congress St, NE, Berryville, VA 22611. He is a principal in the Developer.

12.     Defendant MEL MELAKU NEGUSSIE ("Negussie") is an individual that resides at 1629 K St, NW, Suite 300, Washington, DC 20006. He is a principal in the Developer.

13.     Defendant DISTRICT TITLE, A CORPORATION ("District Title") is a District of Columbia corporation that provides settlement services with a principal place of business at 1775 Eye Street, NW, Suite #560, Washington, DC 20006.

## VENUE AND JURISDICTION

14.     Subject matter jurisdiction exists as diversity of citizenship exists between the parties and there is a sufficient amount in controversy. *See* 28 U.S.C. § 1332.

15.     Venue is proper under 28 U.S.C. § 1391 as the transaction and property in question are located in Washington D.C. and Defendants are subject to personal jurisdiction here.

16.     This Court possesses personal jurisdiction over all the parties, as each party individually has agreed to submit to the jurisdiction of the court in all matters related to the recovery under the promissory note as will be articulated *infra*.

## STATEMENT OF FACTS

### The Property

17.     The subject property is located at 4910 Georgia Ave, NW, Washington, DC 20011, which is at Lot 18 in Square 2926 (the "Property").

18.     In 2018, the Property was the subject of an "Inclusionary Development Covenant filed, by "4910 Georgia Avenue LLC," an apparent predecessor in interest to 4910 Georgia Ave

Holdings, which indicated "Inclusionary Zoning Compliance" with requirements of the District of Columbia government, thus paving the way for future condominium construction at the Property. *See* EXHIBIT ("Exh.") A, attached hereto.

19.     Since 2018, the Property has been subject to development through a *de facto* partnership between Paret and Huertas as explained *infra.*

20.     This partnership has been effectuated through the acts of both the individual defendants and their respective organizations as explained *infra.*

21.     For example, Paret controls Coloma River and shares control of 4910 Georgia Ave Holdings with Negussie (hereafter, Paret and Negussie and their associated entities are referred to collectively, as "the Developer Defendants")

22.     At the relevant time of the sale to Plaintiffs, as discussed *infra*, 4910 Georgia Ave Holdings was the title record holder of the Property.

23.     As stated infra, Huertas controls Washington Capital Partners and all the associated WCP Entities. Specifically involved in this Property were DP Capital, WCP Fund I, and WCP 4910 Georgia Ave. WCP Fund I has provided financing for the Property as described *infra.*

24.     Through a deed dated September 28, 2018, 4910 Georgia Ave Holdings became the fee simple owner of the Property, which was under-developed land at that time being targeted for residential redevelopment.

25.     On August 22, 2019, WCP Fund I recorded an "Assignment of Deed of Trust," dated October 10, 2018 against the Property. The document provides that Huertas, as trustee for the benefit of WCP Fund I, held a lien against the Property secured by a deed of trust and that all his interests held in the Property were transferred to 1Sharpe Opportunity Intermediate Trust.

**Huertas and Paret Form a De Facto Partnership**

26.     On September 20, 2019, Huertas (individually and/or on behalf of the WCP Entities) offered a *de facto* partnership with Paret (individually and/or on behalf of the developer entities, including 4910 Georgia Ave Holdings) (the "Partnership") to develop the Property as a condominium project for residential use. *See* Exh. B.

27.     Exh.  B clarified the responsibilities of the partners for future development and the disbursement of profits, which would be 51% for Huertas and 49% for Paret.

28.     Under the Partnership, Paret (as an individual and on behalf of his related entities) would manage the day-to-day operation of all projects, while Huertas (as an individual and on behalf of his related entities) would manage the financial aspects related to the Property.

29.     Upon information and belief, the September 20, 2019 offer by Huertas was accepted by Paret and represented a *de facto* partnership going forward. From that date forward, Paret coordinated the sale of the condo units on the Property with Huertas' approval and the presumed funding from the WCP Entities.

30.     As provided under the operating agreement of 4910 Georgia Ave Holdings, *inter alia*, the business of 4910 Georgia Ave Holdings was to develop and sell all of its assets, *i.e.*, the condo units described *infra*. *See* Exh. C.

31.     Upon information and belief, all parties to the Partnership, including Huertas and the WCP Entities, received copies of the operating agreement of 4910 Georgia Ave Holdings and knew that selling condo units was the business of 4910 Georgia Ave Holdings.

32.     In June 2020, 4910 Georgia Ave Holdings on behalf of the Partnership began seeking purchasers of condominium units to be located at the Property. At that point, the Property itself was not built out, so the units were being purchased for future construction.

33.     Notably, at that time (June 2020), neither 4910 Georgia Ave Holdings nor any other party had recorded a condominium instrument relating to the Property, other than the Inclusionary Development Covenant. *See* Exh. A.

<u>**Sale of Condo Units to Plaintiffs in July 2020**</u>

34.     In the summer of 2020, the Developer Defendants sought to begin redevelopment of the Property, *i.e.*, with funds "borrowed" from the WCP entities. Notably, at that time, demand for residential construction had risen significantly as interest rates had dropped to record lows.

35.     On or about July 29, 2020, Paret was introduced to Shah and, at the meeting, offered Shah the "opportunity" to buy three condo units at "half price," prior to construction commencing.

36.     Specifically, Paret, via 4910 Georgia Avenue Holdings, offered Plaintiffs three (3) units of property to be constructed at 4910 Georgia Avenue (collectively, the "Condo Units"), for the face price of $600,000, which was (again) represented as half the market value.[1]

37.     At that meeting, Shah was told that the funds paid to purchase the Condo Units would be protected by insurance and  not released until certain construction benchmarks were met.

38.     Notably, at that time, the Inclusionary Development Covenant confirmed that three condominium units had been approved by the D.C. City government.[2] *See* Exh. A, at 19.

39.     In offering the Condo Units to Plaintiffs, Paret represented that (i) any loan affecting the title or status of the deed to the Property would be paid off before the day of closing with Shah on his condo purchases, and (ii) if there was any issue with the seller's representations,

---

[1] The Condo Units were sold to Plaintiffs as having the following land description: "Lot # <u>0018</u> of <u>Square 2926</u> subdivision <u>4910 Georgia Ave NW, 3 Units</u> (Street Address) <u>Washington</u> (City), DC <u>20011</u> (Zip code) together with all fixtures, landscaping, improvements, and appurtenances."

[2] The Developer Defendants also sold an additional three condo units to Dr. Eung Kim ("the Second Purchaser"), who has also brought an action against each of the Defendants in this matter.  That sale was for $600,000.

Plaintiffs would be entitled to both monetary damages as well as specific performance to receive the Condo Units. *See, e.g.*, Exh. D.

40.    Plaintiffs detrimentally relied on these representations, as well as those other statements referenced herein, in making his purchase of the Condo Units.

41.    As of July 31, 2020, none of the WCP entities held a mortgage or other loan encumbrances were held against the Property.[3]

42.    Relying upon this fact, Shah obtained funding to purchase the Condo Units and provided said funds to Developer Defendants' designated title company, Defendant District Title, for purposes of purchasing the Condo Units.

43.    Shah provided $545,000 dollars to District Title for the Closing, after receiving a $55,000 credit from seller 4910 Georgia Ave Holdings.

44.    Shah provided these funds in two installments, $260,000 were transmitted in cash and the remaining funds were provided via wire transfer. *See* Exh.  E.

45.    The Funds were accepted as full and complete consideration for the purchase.

## The Closing and Terms of the Sale

46.    On or around July 31, 2020, the date of closing ("the Closing") for the sale of the Condos to Plaintiffs, Shah visited the Coloma River Office in NE Washington, D.C.

47.    At this closing,  Paret represented that he was acting on behalf of the seller 4910 Georgia Ave Holdings.[4]

---

[3] Cornerstone Capital LLC's loan remained recorded against the Property; however, a certificate of satisfaction for the loan was filed a few days after the sale to Plaintiffs, on August 5, 2020.  Notably, Cornerstone Capital's trustees, one of whom was Drazin (the lawyer for the WCP Entities), recorded this certificate of satisfaction.

[4] Because this was during the COVID-19 Pandemic, in-person attendees during transactions at this time were limited when possible so Huertas did not attend the Closing.

48.     At that time, Paret confirmed receipt of the agreed balance in cash.  (The remainder of the funds had already been wired by Shah to District Title to be held in escrow).

49.     He further presented Shah with the sale agreement and indicated that he would immediately leave the office to record the transfer of interest of the Condo Units to Plaintiffs in the public records.[5]

50.     The sale agreement is titled, "New Construction Pre-Sales Agreement" (the "Sales Agreement"), and provides that 4910 Georgia Ave Holdings, as the seller, would transfer three units of the Property to Plaintiffs, as the buyer. *See* Exh. D.

51.     The Developer Defendants represented and warranted to Plaintiffs throughout the Sales Agreement that the Condo Units would be sold to Plaintiffs by general warranty deed, and that 4910 Georgia Ave Holdings had good and marketable title to the Property free of any liens and encumbrances. *See, e.g.*, Exh. D §§ 4(B), 5(A).

52.     The Developer Defendants further represented and warranted to Plaintiffs that they would not sell, transfer, assign, or otherwise dispose of all or part of the Property or any interest in the Property, without the consent of Plaintiffs.

53.     Paret and his related entities further represented and warranted to Plaintiffs that the Property, or more specifically the interest owned by Plaintiffs, could not be assumed, assigned, or title taken, without the express written approval of Plaintiffs.

54.     Plaintiffs reasonably relied on said representations that the Condo Units would be sold to Plaintiffs, free of any defects in title (or that any defects in title would be cured upon the sale of the Condo Units to Plaintiffs), *inter alia*.

---

[5] Paret also gave Plaintiffs a deed of trust; however, this document is irrelevant as funds had already been provided and no trust was created.

55.     Based on Plaintiffs' reliance on Defendants' representations, Plaintiffs proceeded with the Closing and paid over the agreed funds.

56.     At the Closing, Paret (who signed on behalf of 4910 Georgia Ave Holdings) and Plaintiffs (through Shah) signed the Sales Agreement, which stated the terms of the parties' agreement: to wit, the Plaintiffs had purchased "4910 Georgia Ave, NW, Three Units."[6] Exh. D.

57.     On July 31, 2020, upon the execution of the Sale Agreement, Plaintiffs became the sole and rightful owner of the three Condo Units in fee simple.[7]

58.     Upon information and belief, Huertas and the WCP entities, by virtue of their role in the Partnership, were aware of the sale of the Condo Units to Shah and the proceeds which were received therefrom.  They did not object or raise any concerns.

### The Willful Lack of Recording

59.     After the Sales Agreement was signed by both parties, Paret informed Shah that he was heading directly to the Office of the Recorder of Deeds for the District of Columbia to record Plaintiffs' ownership.

60.     Neither Paret nor anyone else recorded Plaintiffs' interest in the Property.

61.     Plaintiffs did not learn of this lack of recording for the Condo Units until after the foreclosure of the Property as described herein.

62.     Another purchaser, Dr. Eung Kim, also attended Paret and Negussie's presentation on July 29, 2020 relating to the Property, also purchased three (3) condo units from 4910 Georgia

---

[6] In keeping with the representation that the Condo Units were "half price," the Sales Agreement stated that the transaction was contingent upon the Units appraising for "$400,000" each. *See* Exh. D at para. 2(A).

[7] The only remaining defect in title to the Property was cured by a certificate of satisfaction filed a few days after Closing. *See supra*, Note 2.

Ave Holdings on July 31, 2020 for the aggregate sum of $600,000, and also had his purchase left unrecorded.

63.     The Developer Defendants did not "forget" to record the instruments protecting their own purported interests in the Property in the days following the execution of the Sale Agreement—rather, any such omission was intentional.

### The Subsequent Transactions with Plaintiffs' Funds and the Property

64.     All Defendants were aware that Plaintiffs, as of July 31, 2020, were the rightful owners of the Condo Units, and that 4910 Georgia Ave Holdings did not have the right to convey the Plaintiffs' interest in the Condo Units (or the Property) without Plaintiffs' permission.

65.     Regardless, 4910 Georgia Ave Holdings retained Plaintiffs' $545,000 without recording the transfer of title of the Condo Units to Plaintiffs.

66.     Upon information and belief, this unauthorized use of funds was part of a scheme to "finance" the Property and put the Plaintiffs' interest at risk, without any notice or consent.

67.     In furtherance of this scheme, the Developer Defendants, with District Title's involvement, took the following actions (or omissions):

a.  Did not record the Sale Agreement for the Condo Units;

b.  Disbursed Plaintiffs' funds held by District Title without Plaintiffs' knowledge and without fulfilling terms of the agreement;

c.  Placed the newly acquired $545,000 of Plaintiffs' funds and $600,000 of the Second Purchaser into a separate escrow account with District Title; and

d.  Utilized the newly acquired $1,200,000 in funds to cover the closing costs needed to obtain financing from WCP Fund I. *See infra.*

68.     In early August 2020, *i.e.*, after the Plaintiffs' purchase and with evident knowledge of same, the WCP Entities had Drazin, as Trustee, prepare documents to convey the **commercial aspects** of the Property from 4910 Georgia Ave Holdings to WCP Fund I in exchange for purportedly financing the construction of the Property.

69.     Notably, the residential aspects of the Property, including Plaintiffs' Condo Units, were not included by any parties to this matter in conveyances after July 31, 2020.

70.     In the first week of August 2020, Drazin prepared two Deeds of Trust for the benefit of the WCP entities as lender:

    a.   A Commercial Deed of Trust for $852,872.00 (the "$852K WCP Deed of Trust"), the note for which is attached hereto as EXH.  F1 (containing the word "commercial" in its title), and the $852K WCP Deed of Trust attached as EXH.  F2 ; and

    b.   A Commercial Deed of Trust for $10,861,300.00 (the "$10.86M WCP Deed of Trust"), the note for which is attached hereto as EXH.  G1 (containing the word "commercial" in its title), and the $10.86M WCP Deed of Trust attached as EXH.  G2; and

    c.   Each of these documents was backdated to July 31, 2020, *i.e.*, the date of Plaintiffs' closing, despite being signed in August of 2020.

71.     As stated *infra*, these deeds of trust were deliberately backdated in order to be prior in time to the Plaintiffs' Sale Agreement, thereby indicating Drazin's (and WCP's) knowledge of the same. The intent of this act was to effectively "void" Plaintiffs' purchase of the Condo Units and/or subordinate it to the financing occuring in August 2020.

72.     **On August 5, 2020,** Paret, Negussie, and Huertas, on behalf of their respective entities, with the assistance of Drazin, executed a HUD-1 showing the loan to 4910 Georgia Ave Holdings from WCP Fund I, which was prepared by District Title and executed for the $10.86M WCP Deed of Trust transaction (the "HUD-1"), attached as EXH. H.

73.     The HUD-1 is signed by each of Paret, on behalf of the borrower, and Huertas, on behalf of the lender.

74.     Notably, the HUD-1 reflects a $50,000 commission to a broker, DH Partners, LLC, responsible for facilitating the sale of the Condo Units to the Plaintiffs. It also reflects a "closing cost" payment made by Borrowers (i.e. 4910 Georgia Ave. Holdings) in the amount of $1.253 million, i.e. the condo payments made by Plaintiffs and Dr. Kim

75.     In other words, the Shah Purchase (and Dr. Kim's Purchase) was disguised on the HUD-1 to appear as if it was part of the larger WCP refinancing.

### The April 2022 Foreclosure

76.     In 2021-2022, Paret and Huertas took actions to hide their entities' interests in the Property, partially due to litigation that had been filed regarding other projects.

77.     Such actions included conveying (or concealing) interests in the Property that had been otherwise sold to *bona fide* purchasers, such as Plaintiffs. These actions included foreclosure of property interests, such as those held in the Property.

78.     To that end, Huertas, through the WCP Entities and with Drazin's assistance, recorded the Assignment of Deed of Trust on April 18, 2022, in which WCP Fund I assigned its Property interest to SF NU, LLC ("SF NU"). *See* Exh. I.

79.     This document was backdated to October 20, 2020.

80.     Three days later, on April 21, 2022, Huertas recorded the Deed of Appointment of Substitute Trustee, which replaces himself with Drazin as the trustee over the $852K WCP Commercial Deed of Trust Note.[8]

81.     Also on April 21, Huertas, with the various WCP Entities and Drazin's assistance, recorded the Affidavit of ***Non-Residential*** Mortgage Foreclosure, which was signed by Christina Araujo, Director of Finance of WCP Fund I, on behalf of SF NU, LLC. *See* Exh. J.

82.     The next day, on April 22, 2022, SF NU LLC recorded the Notice of Foreclosure Sale of Real Property or Condominium Unit, signed by Drazin as trustee. *See* Exh. K.

83.     The "Notice" purports to state that 4910 Georgia Ave Holdings owes $1,001,840.33 under the $852K WCP Commercial Deed of Trust Note which was in default and, therefore, the Property was subject to foreclosure.

84.     Plaintiffs received no notice of the foreclosure, despite Huertas and Drazin's awareness of Plaintiffs' ownership interest.

85.     As Trustee, Drazin conducted the foreclosure sale, without any notice to Shah, on May 24, 2022.

86.     As a result of that sale, a WCP-associated entity "bought" the Property at a significant discount. The price paid was $10,000 plus $8,030,468.70 to pay off the Deed of Trust with interest that was held by Huertas as trustee for WCP Fund I.

87.     On September 15, 2022, Drazin, as Trustee, recorded the "Substitute Trustee's Deed, which has an effective date of August 19, 2022.  *See* Exh. L.

---

[8] The Appointment of Substitute Trustee notes that this is a "***Commercial*** Deed of Trust Note," despite the fact that the Property was specifically marketed to Shah and sold as residential condo units.

88. This Substitute Trustee's Deed purports that the Property was sold by Drazin, the trustee of SF NU to SF 4910 Georgia Ave NW LLC, whose mailing address is in the care of "Washington Capital Partners" and the same address as the WCP Entities.

89. As provided by Paragraph L of the Substitute Trustee's Deed, SF 4910 Georgia Ave NW LLC "is an affiliate and/or wholly owned subsidiary of SF NU designated by SF NU to take title to the Property." Exh L, at 3 ¶ L.

90. On October 6, 2022, SF 4910 Georgia Ave NW LLC recorded a Deed dated September 30, 2022, in which it transferred its interest in the Property to Defendant WCP 4910 Georgia Ave for **$9,008,460.72**, *i.e.*, the balance of the $10.86M loan. *See* Exh. M.

91. WCP 4910 Georgia Ave is an entity that is controlled by Huertas and is among the associated WCP Entities.

92. As a result of all these post-foreclosure conveyances, the WCP Entities effectively transferred the Property from themselves to themselves, while canceling Shah's ownership – despite the fact that the foreclosure only dealt with "commercial" aspects of the Property.

93. Plaintiffs were not informed of these post-Sale Agreement conveyances or the lack of recording of Plaintiffs' interest until after all these events had occurred.

### District Title and Its Release of Funds from Escrow

94. District Title was involved in the original purchase of the Property. It also was the land title company retained to handle Shah's purchase of the Condo Units and, as such, had a fiduciary duty owed to him.

95. District Title failed to do *any* diligence in its work in regard to Shah's purchase of Condo Units at the Property.

96.     Per the parties' agreement, District Title was to be title company for Plaintiffs in their purchase of the Condo Units and the sellers were to have a separate title company.

97.     Yet District Title never communicated directly with Plaintiffs—in any respect— even while handling their funds.

98.     At that time, District Title knew that the funds escrow were to be held in Plaintiffs' name and not released until all parties at the Closing consented.

99.     On July 30, 2020, District Title was specifically instructed that the funds placed by Plaintiffs into escrow were not to be released until (i) all parties had signed off on the contracts, and (ii) Shah approved the release of funds.

100.    On July 30, 2020, Shah placed part of the funds, around $145,000 into escrow with District Title for Plaintiffs' purchase of the Condo Units.

101.    When Plaintiffs provided the funding to District Title, the payments were noted as "PURCHASE PROPERTY REF20-1617 ESCROW NASIR SHAH."

102.    District Title was in possession of the executed Sale Agreement and was required to comply with its terms.

103.    Yet District Title released the entirety of the funds that Plaintiffs had put in escrow, without seeking or receiving Plaintiffs' permission.

104.    District Title had no right to release Plaintiffs' funds without Shah's permission.

105.    Despite being the title company, District Title never performed a title search of abstract, mortgagee's policy, or owner's policy for Plaintiffs.

106.    District Title took no action to verify that the Property's title was clear on the day of the Closing.

107.    District Title took no action to record Plaintiffs' interest in the Condo Units.

108.     District Title permitted itself to be paid for this service to Plaintiffs that it never performed for the title search, recording, taxes, *inter alia*.

109.     Despite failing to record Plaintiffs' interest, District Title documented payments to itself and to Plaintiffs' broker in the HUD-1. *See* Exh. H.

110.     District Title had knowledge of the various parties' involvement with the Property and facilitated the other Defendants' scheme for its own benefit.

## CAUSES OF ACTION

### COUNT I – Declaratory Judgment and Action to Quiet Title to the Property
(WCP Entities)

111.     All previously stated paragraphs are incorporated by reference herein.

112.     This Court has the power to issue declaratory judgments under 28 U.S.C. § 2201 and Federal Rule of Civil Procedure ("FRCP") 57.

113.     There is an ongoing controversy over the ownership of the Property, and the parties are actual adversaries such that the issues are fully and faithfully developed.

114.     There is a dispute between the parties as to whether Plaintiffs obtained title to the Condo Units that is superior to the title of the WCP Entities.

115.     To wit, Plaintiffs obtained a fee simple interest in the Condo Units through the execution of the Sale Agreement and consummation of the underlying sale.

116.     WCP Entities knew of Plaintiffs' interest in the Condo Units as of the time of the Sale Agreement's execution.

117.     WCP Entities knew that they had no lawful right to convey Plaintiffs' interest in the Condo Units after the Closing.

118.    WCP Entities knew that after the Sale Agreement's execution and Closing, any interest held in the Property by Georgia Avenue Holdings was only for the commercial aspects of the Property and could not terminate Plaintiffs' interest in the Condo Units.

119.    The deeds, notes, deeds of trust, and other documents affecting the title of the Condo Units, aside from any statement of satisfaction, are *void ab initio* and a nullity, as all of the Defendants, including the WCP Entities, do not have authority to sell, transfer or otherwise convey the Condo Units.

120.    Nor do the WCP Entities have the ability to "cancel" that interest through foreclosure, which predates the interest of the WCP Entities and is superior to it.

121.    This dispute has caused Plaintiffs to sustain injury as WCP Entities are depriving Plaintiffs of their rightful interest in the Condo Units.

122.    This injury is redressable by the Court through declaratory judgment.

**WHEREFORE** Plaintiffs pray that this Honorable Court declares that Plaintiffs are entitled to a declaratory judgment quieting title to the Property in accordance with the following interests:

a.  The deeds, notes, deeds of trust, and other documents purporting to transfer the title of the Condo Units—whether directly or indirectly through the ownership of the Property—aside from any statement of satisfaction, are *void ab initio* and a nullity;

b.  Following the execution of the Sale Agreement, Defendants, including WCP Entities, had no legal right to convey or anyway transfer any aspect of the Condo Units without the consent of Plaintiffs;

c.  The foreclosure or enforcement of any mortgage, deed of trust, or other lien for sums due as the result of an agreement for which Plaintiffs are not parties, has no effect on

Plaintiffs' superior interest in the Condo Units or their undivided interest in the Property as a whole;

d.  Plaintiffs own in fee simple and are entitled to the quiet and exclusive peaceful possession of the Condo Units;

e.  WCP Entities, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the Condo Units;

f.  All recordings by WCP Entities subsequent to the Sale Agreement are invalid and ineffective under D.C. Code § 42-404, as they relate to the Condo Units;

g.  WCP Entities may not take any future action affecting the title of the Property without the written consent of Plaintiffs; and

h.  Such further relief as justice requires.

## <u>COUNT II – Constructive Trust</u>
(WCP Entities)

123.    All previously stated paragraphs are incorporated by reference herein.

124.    WCP Entities have no rightful claim to both the retain the Plaintiffs' funds provided for the Condo Units and claim that the Plaintiffs have no ownership interest in the Condo Units. Indeed, the funds they acquired from Plaintiffs have been used wrongfully and fraudulently.

125.    WCP Entities have an equitable duty to return the legal title they wrongfully recorded to Plaintiffs and any other bona fide purchaser of a condominium unit at the Property.

126.    WCP Entities would be unjustly enriched if permitted to retain title to the Property, without any stake granted to the Plaintiffs.

127.    Plaintiffs respectfully request that this Court find that WCP Entities' retention of any aspect of the Condo Units is unjust, and that legal title is held and has been held in constructive trust for the benefit of Plaintiff.

**WHEREFORE** Plaintiffs pray that this Honorable Court:

a.  uses its equitable powers to impose a constructive trust upon any interest in the Property wrongfully held by Defendants, and to order that the Condo Unit's legal and equitable title are reunited in the rightful owners, Plaintiffs, and for all other relief as justice so requires; and

b.  finds that Plaintiffs' funds have remained held in trust with District Title or uses its equitable powers to impose a constructive trust upon the funds placed by Plaintiffs into escrow with District Title, and orders that District Title must return the funds held in trust to the rightful owners, Plaintiffs;

c.  and for all other relief as justice so requires.

### COUNT III – Conversion
(All Defendants)

128.    All paragraphs contained are incorporated by reference herein.

129.    Plaintiffs obtained the right to ownership of the Condo Units through the Sale Agreement and their subsequent payment.

130.    As identified herein, each of the Defendants interfered with Plaintiffs' right to the Condo Units. First Paret, Negussie and the Developer failed to record the property interest. Then, the WCP Entities engaged in the fraudulent foreclosure sale, through the backdated liens placed on the Property, *et cetera*.

131.    In each case, the Defendants further succeeded in converting those funds paid by the Plaintiffs for purposes of the Closing, i.e. securing ownership of the Condo Units, without any authority from the Plaintiffs.

132.    As a result, Plaintiffs have lost control of the funds they paid for the sale of the Condo Units and been damaged by the conversion for the value of those funds.

**WHEREFORE** Plaintiffs pray that this Honorable Court finds each of the Defendants jointly and severally liable to Plaintiffs for this conversion for the value of the funds wrongfully converted $545,000, plus interest and any incidental damages, including attorney fees, punitive damages, and such further relief as justice requires.

**COUNT IV – Fraud & Fraud in the Inducement,**

(Defendants 4910 GEORGIA AVE HOLDINGS LLC, CHARLES PARET,
MEL MELAKU NEGUSSIE)

133.   All paragraphs contained are incorporated by reference herein.

134.   The Developer Defendants, either directly or through their agents, made numerous false representations to Plaintiffs regarding the title of the Condo Units, the presence of any liens thereon, and how they would record Plaintiffs' interest in the Condo Units, *inter alia*.

135.   Each of these, as well as the representations discussed *supra*, represented material facts that were known by Developer Defendants to be false.

136.   Developer Defendants made these false representations to Plaintiffs with the intent of deceiving Plaintiffs into  purportedly purchasing the Condo Units and thereby placing their funds ($545,000) at substantial risk of loss.

137.   Plaintiffs reasonably relied on these misrepresentations to their detriment.

138.   Plaintiffs have now been damaged in the amount of the loss of the Condo Units, plus incidental damages, and attorney fees.

**WHEREFORE** Plaintiffs pray that this Honorable Court finds Defendants jointly and severally liable to Plaintiffs:

      a.   For fraud and fraud in the inducement, and the conspiracy thereof, for the value of the Condo Units, incidental damages, and punitive damages, all in an amount of no less than $545,000.00; or,

b.   all attorney's fees incurred in bringing this action and remedying the Defendants'

fraud; and

c.   such further relief as justice requires.

## COUNT V – Breach of Fiduciary Duties
(Defendant District Title)

139.   All paragraphs contained are incorporated by reference herein.

140.   Shah placed $545,000 of funds into escrow with District Title on July 30, 2020, for

Plaintiffs' purchase of the Condo Units.

141.   District Title accepted these funds as trustee on behalf of Plaintiffs.

142.   District Title had fiduciary duties owed to the trust and Plaintiffs as beneficiaries

of the trust including, administering the trust as a prudent person would, by considering the

purposes, terms, distributional requirements, and other circumstances of the trust; administering

the trust in good faith, in accordance with its terms and purposes and the interests of the

beneficiaries; providing the duty of loyalty required by D.C. Code § 19–1308.02; providing the

prudent administration of the trust as required by D.C. Code § 19–1308.04; and taking reasonable

steps to take control of and protect the trust property as required by D.C. Code § 19–1308.09.

143.   District Title breached these fiduciary duties by accepting the funds knowing that

it was unable to fulfill its duties, engaging in self-dealing when it paid itself from these funds,

losing the entirety of the funds by making a distribution of such without Plaintiffs' consent, failing

to prudently invest or manage the funds, and being loyal only to third-parties in this transaction

with whom District Title had prior relations.

144.   Plaintiffs have been damaged by District Title's breach of its fiduciary duties in the

amount of the trust property, which is $545,000, plus interest at the judgment rate.

**WHEREFORE** Plaintiffs pray that this Honorable Court finds District Title liable to Plaintiffs for $545,000, plus interest and incidental damages, for its breach of fiduciary duties, and such further relief as justice requires.

### COUNT VI – Unjust Enrichment
(the WCP Entities)

145.    All paragraphs contained are incorporated by reference herein.

146.    Plaintiffs conferred a benefit to the WCP Entities by paying $545,000 for the purchase of the Condo Units, which money was subsequently paid over to the WCP Entities.

147.    The WCP Entities knowingly retained that benefit by receiving the funds for that financing, i.e. the two loans, represented by the August 5, 2020 HUD-1 for which they were fully compensated as a result of the 2022 foreclosure action.

148.    Plaintiffs are now out their $545,000 and never received the Condo Units.

149.     It is inequitable for the WCP Entities to retain the $545,000 as they have received the benefit of the money without providing anything in return to Plaintiffs i.e. the Condo Units.

150.    The WCP Entities have been unjustly enriched by receiving $545,000 from Plaintiffs and providing Plaintiffs with no Condo Units. Therefore, Plaintiffs have been damaged in the amount of the value of the Condo Units, which is no less than $545,000 plus interest.

**WHEREFORE** Plaintiffs pray that this Honorable Court enter judgment in their favor and against all of the WCP Entity Defendants, award Plaintiffs $545,000 in compensatory damages, plus interest, and all attorney's fees incurred in bringing this action.

### COUNT VII – Violation of DC Consumer Protection Act, D.C. Code §28-3901 et. seq.
(All Defendants)

151.    All paragraphs contained are incorporated by reference herein.

152.    D.C. Code §28-3905(k)(1)(A) allows a consumer to bring an action seeking relief from the use of a trade practice in violation of D.C. Law.

153.    Under D.C. Code §28-3904, a unlawful trade practice can include:

"(e) misrepresent as to a material fact which has a tendency to mislead;

(e-1) represent that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

(f) fail to state a material fact if such failure tends to mislead;

(q) fail to supply to a consumer a copy of a sales or service contract, lease, promissory note, trust agreement, or other evidence of indebtedness which the consumer may execute;

(r) make or enforce unconscionable terms or provisions of sales or leases;

(r)(2) knowledge by the person at the time of the sale or lease of the inability of the consumer to receive substantial benefits from the property or services sold or leased."

154.    The Plaintiffs as purchasers of the Condo Units in DC are "consumers" under the definition put forth in D.C. Code §28-3901(2) and therefore have standing to bring this action.

155.    Defendants DP CAPITAL LLC, WCP FUND I, LLC, WCP 4910 GEORGIA AVE NW LLC, 4910 GEORGIA AVE HOLDINGS LLC, COLOMA RIVER HOLDINGS LLC, CHARLES PARET, MEL MELAKU NEGUSSIE, and DISTRICT TITLE, A CORPORATION are "merchants" under the definitions set forth D.C. Code §28-3901(3) whose actions are governed by the  Consumer Protection Act, D.C. Code §28-3901 et. seq..

156.    The actions of the Defendants in selling the Condo Units to the Plaintiffs without recording the title, fraudulently backdating documents, fraudulently conducting a foreclosure sale are all prohibited trade practices under the DC Consumer Protection Act, specifically under D.C. Code §28-3904.

157.    In selling the condo units to the Plaintiffs, the Defendants violated the DC Consumer Protection Act, D.C. Code §28-3901 et. seq. in engaging in prohibited trade practices, namely those identified in D.C. Code §28-3904(e)-(e-1) and (q)-r(2).

158.    As a result of the use of prohibited trade practices by the Defendants., the Plaintiffs paid $545,000 for three condo units that the Defendants never intended to convey.

159.    These violations of the Consumer Protection Act, D.C. Code §28-3901 et. seq. by the Defendants have damaged the Plaintiffs in the amount of $545,000.

160.    The Defendants have used these deceptive practices to damage other consumers, namely through the false sale of Condo Units and backdating of subsequent titles.

161.    This violation of the Consumer Protection Act, D.C. Code §28-3901 et. seq. is part of a continuing trend by these Defendants, necessitating their enjoinment from participating in any further land sale deals in the District of Columbia.

**WHEREFORE** Plaintiffs pray that this Honorable Court enter judgment in their favor and against all of the WCP Entity Defendants, award Plaintiffs $545,000 in compensatory damages, trebled to $1.635 million plus pre and post judgment  interest, an injunction barring the Defendants from engaging in the sale of real property in the District of Columbia and awarding Plaintiffs all attorney's fees incurred in bringing this action.

## DEMAND FOR A JURY TRIAL

Plaintiffs demand a trial by jury as to all claims asserted in the Complaint for which a jury trial is allowed under the law.

Respectfully submitted,

Plaintiffs SIG and Shah,

By counsel,

By: ___/s/ J. Chapman Petersen_____
J. Chapman Petersen, Esq., DC Bar# 044840
CHAP PETERSEN & ASSOCIATES, PLC
3970 Chain Bridge Road
Fairfax, Virginia 22030
(571) 459-2512 – Telephone
(571) 459-2307 – Facsimile
jcp@petersenfirm.com
*Counsel for Plaintiffs*