IN THE
UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

NASIR A. SHAH, *et al.*,

    *Plaintiffs,*

v.                                                  No. 1:23-cv-1102-TJK

DP CAPITAL LLC, *et al.*,

    *Defendants*.

**PLAINTIFFS' BRIEF IN OPPOSITION TO WCP PARTIES'**
**MOTION TO DISMISS**

                                  J. Chapman Petersen, Esq., Bar ID# 0448740
                                  Federico J. Zablah-Siman, Bar ID#VA166
                                  CHAP PETERSEN & ASSOCIATES, PLC
                                  3970 Chain Bridge Road
                                  Fairfax, Virginia 22030
                                  (571) 459-2512 – Telephone
                                  (571) 459-2307 – Facsimile
                                  jcp@petersenfirm.com
                                  *Counsel for Plaintiffs*

COME NOW Plaintiffs SHAH INVESTMENT GROUP LLC ("Shah Investment") and NASIR A. SHAH ("Shah") (collectively, "Plaintiffs"), by counsel, and hereby state as follows in opposition to the Motion to Dismiss (the "Motion") filed by DP CAPITAL LLC ("DPCL"), WCP FUND I LLC ("WCP"), and WCP 4910 GEORGIA AVE NW LLC ("WCP 4910") (collectively, the "WCP Parties," and each individually a "WCP Party").

## INTRODUCTION

In their motion to dismiss the Plaintiffs' Complaint, the WCP Parties misconstrue the factual allegations made in the complaint. The basis of the claims against the WCP Parties are two-fold, (1) the money paid for purchase of the condo units was to the benefit of WCP and (2) that the WCP Parties foreclosure of the property without providing proper notice to all parties that the WCP Parties knew held an interest in the property was an attempt to retain the benefit without proper recompense. On these grounds, the Claims against the WCP Parties state a viable claim under well-established standards and the motion to dismiss should be denied.

## STATEMENT OF FACTS

Since 2019, Charles Paret and the WCP Parties (through the principal, Daniel Huertas), have developed properties throughout the District of Columbia and surrounding areas. One such property was a proposed condominium development at 4910 Georgia Ave, NW, Washington, DC 20011 (the "Property"). *See* Amended Complaint ("Am. Compl.") ¶ 17-18. This development was effectuated through 4910 Georgia Ave Holdings (with their principals, the "Developer Defendants"), which became the title record holder of the Property and later received funding from their ostensible partner, the WCP Parties, pursuant to a *de facto* partnership. *See* Am. Compl. ¶ 26.

Per the *de facto* partnership, all parties, including Huertas and the WCP Parties, received copies of the operating agreement of 4910 Georgia Ave Holdings and, therefore, knew that it was

2

in the business of selling condo units. *See* Am. Compl. ¶ 30; *See* Exh. C. In June 2020, 4910 Georgia Ave Holdings, as the developer in the partnership, began seeking out purchasers of condominium units at the Property, with the intent of raising upfront capital. At that point, the Property itself was not built out, so the units being purchased were for future construction. *See* Am. Compl. ¶ 32.

In the summer of 2020, the Developer Defendants sought to begin construction at the Property, *i.e.*, with funds "borrowed" from the WCP Parties. *See* Am. Compl. ¶ 34. Notably, at that time, demand for residential construction had risen significantly as interest rates had dropped to record lows. *See* Am. Compl. ¶ 34.

### *Shah Introduced to Developer Defendants*

On or about July 29, 2020, Paret was introduced to Mr. Shah and, at the meeting, offered Shah the "opportunity" to buy condo units at "half price," prior to construction commencing at the Property. Am. Compl. ¶ 35. Specifically, Paret, through 4910 Georgia Avenue Holdings, offered **three (3) units to be constructed** at 4910 Georgia Avenue (collectively, the "Condo Units"), for the face price of $600,000, which was (again) represented as half the market value.[1] Am. Compl. ¶ 40.

As of July 31, 2020, none of the WCP Parties held a mortgage or other loan encumbrances against the Property.[2] Am. Compl. ¶ 45. Relying upon this fact, Shah obtained funding to purchase the Condo Units utilizing entities under his control; he then provided said funds to the Developer Defendants' designated title company, Defendant District Title, so to purchase the Condo Units.

---

[1] The Condo Units were sold to Plaintiffs as having the following land description: "Lot # 0018 of Square 2926 subdivision 4910 Georgia Ave NW, 3 Units (Street Address) Washington (City), DC 20011 (Zip code) together with all fixtures, landscaping, improvements, and appurtenances."

[2] Cornerstone Capital LLC's loan remained recorded against the Property; however, a certificate of satisfaction for the loan was filed a few days after the sale to Plaintiffs, on August 5, 2020. Notably, Cornerstone Capital's trustees, one of whom was Drazin (the lawyer for the WCP Entities), recorded this certificate of satisfaction.

Am. Compl. ¶ 46. Specifically, Shah provided **$545,000** to District Title at Closing, after receiving a $55,000 credit from seller 4910 Georgia Ave Holdings. *See* Am. Compl. ¶ 47.

Shah provided these funds in two installments: $260,000 transmitted in cash on July 30, 2020, and the remaining funds via two wire transfers on July 30, 2020, and October 16, 2020. *See* Am. Compl. ¶¶47-50; *id.*, Exh. E. The Funds were accepted as full and complete consideration for the purchase. Am. Compl. ¶ 51.

### *Closing of Condo Purchase on July 31, 2020*

On or around July 31, 2020, the date of closing (the "Closing") for the Condos to Plaintiffs, Shah visited the Coloma River Office in NE Washington, D.C. Am. Compl. ¶ 52. At this closing, Paret represented that he was acting on behalf of the seller 4910 Georgia Ave Holdings.[3] Am. Compl. ¶ 53.

At Closing, Paret confirmed receipt of the agreed balance, which was to be held for Shah by District Title in escrow. *See* Am. Compl. ¶ 56; *id.*, Exh. D, at 2-3. In return, he presented Shah with the executed sale agreement and stated that he would record the transfer of the Condo Units to Plaintiffs in the public records.[4] *See* Am. Compl. ¶ 56. The sale agreement is titled, "New Construction Pre-Sales Agreement" (the "Sales Agreement"), and provides that 4910 Georgia Ave Holdings, as the seller, would transfer three units of the Property to Plaintiffs, as the buyer. *See* Am. Compl. ¶ 57; *id.*, Exh. D. On its face, it requires the Seller to record the Deed transferring possession of the Condo units to the Buyer. *See id.*, Exh. D, at 4.

---

[3] Because this was during the COVID-19 Pandemic, in-person attendees during transactions at this time were limited when possible so Huertas did not attend the Closing.

[4] Paret also gave Plaintiffs a deed of trust; however, this document is irrelevant as funds had already been provided and no trust was created.

4

The Developer Defendants represented and warranted to Plaintiffs that the Condo Units would be sold by general warranty deed, and that 4910 Georgia Ave Holdings had good and marketable title free of any liens and encumbrances. Am. Compl. ¶ 57. *See, e.g.*, Am. Compl., Exh. D §§ 4(B), 5(A).

On July 31, 2020, upon the execution of the Sale Agreement and their payment of the bargained-for consideration, Plaintiffs became entitled to sole ownership of the three Condo Units in fee simple.[5] Am. Compl. ¶ 63, Huertas and the WCP Parties, by virtue of their role in the Partnership and prior dealings with the Property were aware of the sale of the Condo Units to Shah and the proceeds which were received therefrom. They did not object or raise any concerns. Am. Compl. ¶ 64.

At the Closing, Paret informed Shah that he was heading directly to the Office of the Recorder of Deeds for the District of Columbia to record Plaintiffs' ownership in the three Condo Units. *See* Am. Compl. ¶ 67. Yet neither Paret nor anyone else with the Developer Defendants recorded the interest that day; indeed, it was never recorded. *See id.* ¶ 68. Meanwhile, the title company went ahead and transferred all the Plaintiffs' funds as if there had been an actual closing. *See id.* ¶ 67. Plaintiffs did not learn of this lack of recording for the Condo Units until after the foreclosure of the Property as described herein. *id.* ¶ 68.

The Defendants, both the Developer Defendants and the WCP Parties, were aware that (i) Plaintiffs, as of July 31, 2020, had at least an equitable interest in the Condo Units by virtue of their purchasing same, and (ii) that 4910 Georgia Ave Holdings did not have the right to convey the Plaintiffs' interest in the Condo Units (or the Property) without Plaintiffs' permission. *See* Am. Compl. ¶ 71. Yet no action was taken to record or secure this interest; instead, it was treated as a

---

[5] The only remaining defect in title to the Property was cured by a certificate of satisfaction filed a few days after Closing. *See*, *supra*, Note 2.

5

nullity by everyone involved. *See* Am. Compl. ¶ 74. Upon information and belief, the funds were instead utilized as a part of a scheme to benefit WCP by using the funds to pay its "costs" of capital, while subordinating the interest. *See id.* ¶ 74.

### *WCP Loans Funds on August 5, 2020*

In early August 2020, *i.e.*, after the Plaintiffs' purchase and with knowledge of same, the WCP Parties had Drazin, as Trustee, prepare documents to convey the Property from 4910 Georgia Ave Holdings to WCP Fund I in exchange for purportedly financing the construction of the Property. Am. Compl. ¶ 77. All the documents prepared and recorded for the benefit of WCP were deliberately backdated in order to be prior in time to the Plaintiffs' Sale Agreement, thereby indicating Drazin's (and WCP's) knowledge of the same. *See id.* ¶¶ 77=78. The intent of this act was to effectively "void" Plaintiffs' purchase of the Condo Units and/or subordinate it to the financing occurring a week later in August 2020. *See id.* ¶ 78

On August 5, 2020, Paret and Negussie, on behalf of the Developer Defendants, and Huertas, on behalf of the WCP Parties (and with the assistance of their lawyer, Drazin) executed a HUD-1 showing the loan from WCP Fund 1 to 4910 Georgia Ave Holdings. *See* Am. Compl. ¶ 79; *id.*, Exh. H. The HUD-1 was prepared by District Title and reflected the $10.86M WCP Loan which was secured by the "First" Deed of Trust. *See* Am. Compl. ¶ 79. The HUD-1 is signed by Paret, on behalf of the borrower, and Huertas, on behalf of the lender. *See id.* ¶ 80.

Notably, the August 5, 2020, HUD-1 reflects a $50,000 commission to DH Partners, LLC, the broker for the sale of the Condo Units to the Plaintiffs. *See* Am. Compl. ¶ 81. It also reflects a "closing cost" payment made by Borrowers (*i.e.*, 4910 Georgia Ave Holdings) in the amount of $1.253 million, *i.e.*, reflecting the condo payments made by Plaintiffs and Dr. Kim. *See* Am. Compl. ¶ 81. In other words, Shah's Purchase was disguised on the HUD-1 to appear as if it was

part of the larger WCP refinancing—when in fact it was a cash windfall received by the Developer Defendants and passed along to WCP Parties. *See* Am. Compl. ¶ 82.

### *WCP Parties Foreclose on Property Without Notice to Shah*

In 2021-2022, both Paret and Huertas took actions to hide their entities' interests in the Property, perhaps due to litigation that had been filed regarding other projects. *See* Am. Compl. ¶ 83. Such actions included conveying (or concealing) interests in the Property that had been conveyed to *bona fide* third-party purchasers, such as Mr. Shah and Dr. Kim. *See id.* ¶ 84. These concealing actions included foreclosure of property interests, such as those held in the Property, so that the role of the Developer Defendants could be snuffed out and all avenues of recovery cut off for the third parties who had been defrauded by them. *See id.* ¶ 85.

To that end, Huertas, through the WCP Parties and with Drazin's assistance, recorded the Assignment of Deed of Trust on April 18, 2022, in which WCP Fund I assigned its Property interest to SF NU, LLC ("SF NU"). *See* Am. Compl. ¶ 85; *id.*, Exh. I. This document was backdated to October 20, 2020, perhaps to protect against creditors arising after that date. *See* Am. Compl. ¶ 86.

Also on April 21, 2022, Huertas, with the various WCP Parties and Drazin's assistance, recorded the Affidavit of **Non-Residential** Mortgage Foreclosure, signed by the Director of Finance of WCP Fund I, on behalf of SF NU. *See* Am. Compl. ¶ 88; *id.*, Exh. J. The next day, on April 22, SF NU recorded the "Notice of Foreclosure Sale of Real Property or Condominium Unit," signed by Drazin as trustee. *See* Am. Compl. ¶ 89; *see id.*, Exh. K. The "Notice" states that 4910 Georgia Ave Holdings owed $1,001,840.33 under the $852K WCP Commercial Deed of Trust Note, which was in default and, therefore, the Property was subject to foreclosure. *See* Am. Compl. ¶ 90.

Plaintiffs received no notice of the foreclosure, despite Huertas and Drazin's awareness of Plaintiffs' ownership interest. Am. Compl. ¶ 91. As Trustee, Drazin thereupon conducted the foreclosure sale, without notice to Shah, on May 24, 2022. *See* Am. Compl. ¶ 92. As a result of that sale, a WCP-associated entity "bought" the Property at a significant discount. Am. Compl. ¶ 93. After a series of transactions, the ownership interest was eventually transferred to WCP 4910 Georgia Ave. *See* Am. Compl. ¶ 99. As a result of all these post-foreclosure conveyances, the WCP Parties effectively transferred the Property from themselves to themselves, while canceling Shah's ownership in the three residential condos – despite the fact that the foreclosure only dealt with "commercial" aspects of the Property. Am. Compl. ¶ 99. Plaintiffs were not informed of these post-Sale Agreement conveyances or the lack of recording of Plaintiffs' interest until after all these events had occurred in spring 2022. *See* Am. Compl. ¶ 100.

After months of unsuccessfully seeking the return of these funds, this Complaint followed.

## **LEGAL STANDARD**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). The pleading standard under Rule 8 does not require "detailed factual allegations," but it demands more than an unadorned, bare assertion. *Iqbal*, 556 U.S., at 677 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S., at 677 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 677 (quoting *Bell Atl.,* 550 U.S., at 556). The

plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S., at 677 (quoting *Bell Atl.,* 550 U.S., at 556). "Thus, although a plaintiff may survive a Rule 12(b)(6) motion even where 'recovery is very remote and unlikely,' the facts alleged in the complaint 'must be enough to raise a right to relief above the speculative level. *Kemp v. Eiland*, 139 F. Supp. 3d 329, 335-36 (D.D.C. 2015) (citations omitted).

## ARGUMENT

I. **The Plaintiffs' Pleadings Overcome the Standard Set By Rules 12(b)(6) of the Federal Rules of Civil Procedure**

   A. **Count VI – Unjust Enrichment**

Given the plausibly alleged facts pleaded by Plaintiffs in their Complaint, it is clear that the WCP Parties have been unjustly enriched[6] by retaining "ownership" of the condominiums.

"Unjust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *News World Comm., Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005). A party may be unjustly enriched by holding title to property. *Gray v. Gray*, 412 A.2d 1208, 1210 (D.C. 1980). When withholding becomes unjust is a question of fact. *Boyd v. Kilpatrick Townsend & Stockton ("Boyd II")*, 164 A.3d 72, 80 (D.C. 2017). "A claim for unjust enrichment only accrues, however, when the enrichment becomes unjust; the statute of limitations 'starts to run upon the occurrence of the wrongful act giving rise to a duty of restitution.'" *Gray*, 412 A.2d, at 1223.

---

[6] Contrary to the assertions by the WCP Parties, the economic loss doctrine does not apply in this matter as an quasi-contract claim is alleged, not one of negligence. *Jefferson v. Collins*, 210 F. Supp. 3d 75, 84 (D.D.C. 2016) ("Furthermore, the economic loss doctrine, which has been adopted by the District, bars a plaintiff from recovering for purely economic losses under a theory of negligence."); *Aguilar v. RP MRP Washington Harbour, LLC*, 98 A.3d 979, 982 (D.C. 2014) ("This means that in jurisdictions that have adopted the [economic loss] doctrine, claimants are barred from recovering lost profits or lost wages due to the negligent interruption of commerce caused by a third-party")

9

Here, the plausibly alleged facts in Plaintiffs' Complaint show that the WCP Parties have been unjustly enriched by retaining "ownership" to the condominiums. As previously stated, Paret and Shah met on July 31, 2020, the Closing date, and executed the Agreement. *See* Am. Compl. ¶ 64 Section 4 of the Agreement explicitly states, "Unless otherwise provided herein, the consummation of the purchase and sale of the Property shall occur upon 'Completion' of the Improvements as provided herein, which is to be on July 31, 2020, (the 'Closing' or 'Closing Date,' which shall be evidenced by delivery of Deed of Trust and payment of Purchase Price). This language shows that Plaintiffs have rightful ownership to the condominiums as Shah, on behalf of Shah Investment Group, LLC, and Paret executed the Agreement. *See* Am. Compl., Exh. D. Furthermore, without Plaintiffs' consent, Paret's actions ended with the transfer of the condominiums to the WCP Parties.

The benefit conferred was the Plaintiffs' payment of $545,000 via the Developer Defendants given to the WCP Parties. Am. Compl.¶ 47. At this standard, this is a sufficient allegation of a conferred benefit to survive a motion to dismiss on this allegation. Moreover, it is clear that the benefit conferred was received by WCP and unjustly retained with full knowledge that the Plaintiffs had provided the benefit. At the time the loan was given to the Developer Defendants, the WCP parties had full knowledge of the purchase of the condo units, and that this loan was used to fund the development of 4910 Georgia. Am. Compl. ¶ 97. Here, the "unjust" retainment of the benefit by the WCP Parties occurs because, with full knowledge of the Plaintiffs' ownership, the WCP Parties foreclosed on the property without notice to the Plaintiffs thereby depriving them of the units that had conferred the benefit to acquire. Am. Compl. ¶ 142-146.

Further, given that the WCP Parties and the Plaintiffs are not in direct contractual privity, necessitating a quasi-contract action rather than a direct action. A quasi-contract is not a contract,

but rather is a duty imposed under certain conditions on a party to compensate the other party for benefits rendered to avoid unjust enrichment. *Bloomgarden v. Coyer*, 479 F.2d 201, 208 (D.C. Cir. 1973). The concept of quasi-contract provides a basis to prevent unjust enrichment in the absence of an obligation. *News World Communs., Inc. v. Thompsen*, 878 A.2d 1218, 1221 (D.C. 2005) (citing Black's Law Dictionary 1120 (5th ed. 1979)). "For [the plaintiff] to recover on a quasi-contractual claim, he must show that [the defendant] was unjustly enriched at his expense and that the circumstances were such that in good conscience [the defendant] should make restitution." *Vereen v. Clayborne*, 623 A.2d 1190, 1193-94 (D.C. 1993). It is clearly alleged throughout the Amended Complaint that WCP Parties benefited from the transaction, retained the payment without recompense and allowing them to retain this benefit at the expense of the Plaintiffs would be inequitable.

Here, given the circumstances, it has clearly been alleged that the WCP Parties have been inequitably and unjustly enriched at the expense of the Plaintiffs and a facially viable claim of unjust enrichment seeking restitution has been alleged in the Amended Complaint. On that basis, the WCP Parties' Motion to Dismiss should be denied.

WHEREFORE, based on the foregoing, Plaintiffs respectfully request that this Court deny the Motion to Dismiss filed by the WCP Parties and grant all further relief that the Court deems just and proper.

## **ORAL HEARING REQUESTED**

Pursuant to Local Rule 7(f), Plaintiffs request an oral hearing on the WCP Parties' Motion to Dismiss.

Dated: October 3, 2023	Respectfully submitted,

SHAH INVESTMENT GROUP and
NASIR SHAH,
By Counsel,


By: */s/ Federico J. Zablah-Siman,*
J. Chapman Petersen, Esq., Bar ID# 0448740
Federico J. Zablah-Siman, Bar ID# VA166
CHAP PETERSEN & ASSOCIATES, PLC
3970 Chain Bridge Road
Fairfax, Virginia 22030
(571) 459-2512 – Telephone
(571) 459-2307 – Facsimile
jcp@petersenfirm.com
*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this Tuesday, October 3, 2023, the foregoing document was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system.

/s/
Federico J. Zablah-Siman, Esq.