**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NASIR A. SHAH et al.,

*Plaintiffs*,

v.

DISTRICT TITLE, A CORPORATION,

*Defendant*.

Civil Action No. 23-1102 (TJK)

**MEMORANDUM OPINION & ORDER**

As Plaintiffs describe it, in 2020, they contributed more than half a million dollars to a real estate deal that was not what it seemed. Plaintiffs say they thought that they were buying half-price condominiums. But the deal allegedly turned out to be a bust. So Plaintiffs sued several parties linked to the deal: District Title, a company that provided escrow services for the transaction; five LLCs allegedly involved in the transaction; and Charles Paret, the alleged principal of the LLC apparently in charge of developing the real estate project.

The parties have since thinned out. After the Court issued an order to show cause as to why the case should not be dismissed for lack of subject-matter jurisdiction, Plaintiffs dismissed all defendants except for District Title. And now District Title wants out too. It has filed two motions to dismiss. In one, it argues that the Court lacks subject-matter jurisdiction. And in the other, it argues that Plaintiffs have failed to join necessary parties. The Court agrees that it lacks subject-matter jurisdiction over the claims brought by Shah and his LLC. But for the reasons explained, it will dismiss only the complaint (and not the case) to give Shah the opportunity to try to establish the Court's jurisdiction over claims brought by him. And given the Court's dismissal of the complaint, it will deny the other motion as moot.

## I. Factual and Procedural Background

Nasir Shah is a Virginia citizen. *See* Minute Order of July 7, 2025. He is "the sole member" of Shah Investment Group LLC, a Virginia LLC. ECF No. 35 ¶ 2. In July 2020, Shah and Shah Investment Group LLC—together, "Plaintiffs"—got involved in the real estate transaction at issue when they were "virtually introduced" to "the Developers": Charles Paret "and his associated entities." *Id.* ¶¶ 20, 34. That virtual introduction mentioned "the opportunity to purchase some specified condominium units." *Id.* ¶ 34. At one point, Paret apparently offered Plaintiffs the "'opportunity' to buy three condo units at 'half price'" before the start of construction. ECF No. 35 ¶ 39.

Paret was apparently persuasive. At the end of July 2020, Shah "obtained funding to purchase the Condo Units and provided said funds to Developers' designated title company to be used by Plaintiffs, Defendant District Title, for purposes of purchasing the Condo Units." ECF No. 35 ¶ 46. "Shah provided $545,000 dollars to District Title for the Closing." *Id.* ¶ 47. As a part of this transaction, Plaintiffs allege that Shah provided detailed instructions to District Title, including "you have to hold my money in escrow under my name Nasir Shah" and "if the deal doesn't work out then my money has to be returned to me no later then 08/03/2020." *Id.* ¶ 104. As Plaintiffs describe it, District Title ultimately transferred the money from escrow without Shah's permission. *Id.* ¶ 125. And after a series of alleged machinations involving Paret and the five LLC Defendants, Shah, and Shah Investment Group allegedly ended up down $545,000 and without any condos. *See id.* at 19.

Plaintiffs first sued in April 2023 and filed their Amended Complaint in September 2023. The Amended Complaint listed seven Defendants: DP Capital LLC; WCP Fund I, LLC; WCP 4910 Georgia Ave NW LLC; 4910 Georgia Ave Holdings LLC; Coloma River Holdings LLC; Charles Paret; and District Title. *See* ECF No. 35 at 1. District Title moved to dismiss the

complaint against it for failure to state a claim, which the Court granted in part and denied in part. *See* ECF No. 36; Minute Order of September 4, 2025. Then in July 2025, after it came to the Court's attention that certain Defendants were not diverse from Plaintiffs, the Court issued an order to show cause why the Court had subject-matter jurisdiction over the case. *See* Minute Order of July 7, 2025. In response, Plaintiffs voluntarily dismissed all Defendants except District Title. *See* ECF No. 41 at 1. Now District Title has filed two motions it styles as motions to dismiss. It moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction.[1] *See* ECF No. 49 at 8. And it moves under Rule 12(b)(7) to dismiss for failure to join a necessary party under Rule 19. *See* ECF No. 46 at 1–2.

## II. Legal Standard

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court must have subject-matter jurisdiction, "the power to decide the claim before it." *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 95 (2017). And "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). A plaintiff has the burden to establish the court's subject-matter jurisdiction. *Kokkonen*, 511 U.S. at 377.

## III. Analysis

### A. District Title's Motion to Dismiss for Lack of Subject-Matter Jurisdiction

In its motion challenging the Court's subject-matter jurisdiction, District Title moves to dismiss on two grounds. First, it argues that the District of Columbia's "door closing" statutes

[1] The Court will construe the self-styled 12(b)(1) motion as one to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(h)(3). *See* ECF No. 49 at 8. "Objections to subject-matter jurisdiction . . . may be raised at any time." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).

mean that the Court lacks subject-matter jurisdiction over claims brought by both Shah and Shah Investment Group LLC. ECF No. 49 at 4–5. Second, it argues that if the door closing analysis knocks out Shah Investment Group LLC, then Shah lacks standing to proceed on his own because of the shareholder standing rule. *Id.* at 5–6.

The District of Columbia has two "door closing" statutes. *See Tel. & Data Sys., Inc. v. Am. Cellular Network Corp.*, 966 F.2d 696, 699 (D.C. Cir. 1992); *de Sousa v. Embassy of Republic of Angola.*, 267 F. Supp. 3d 163, 171 (D.D.C. 2017). One—which the Court refers to as the "Foreign Entity Rule"—restricts the ability of business entities operating in the District of Columbia to sue here without registering the entity. *See* D.C. Code § 29-105.02(b). The other—which the Court refers to as the "Individual Rule"—restricts the ability of individuals doing business under a trade name in the District of Columbia to sue here without registering the trade name. *See* D.C. Code § 47-2855.03(d). The D.C. Circuit construes the door closing statues as a bar on subject-matter jurisdiction. A "federal court, sitting in diversity in the District, must apply the District's door closing statute." *Tel. & Data Sys., Inc.*, 966 F.2d at 699. And if a party has not complied with the statutes, that "failure . . . prevent[s] the exercise of diversity jurisdiction." *Id.*[2] In other words, the D.C. Circuit treats failure to comply with door closing rules as a "jurisdictional bar." *Hunter Innovations Co. v. Travelers Indem. Co. of Conn.*, 605 F. Supp. 2d 170, 172 (D.D.C. 2009).

**1. The Foreign Entity Rule**

The Foreign Entity Rule provides that a "foreign filing entity or foreign limited liability partnership doing business in the District may not maintain an action or proceeding in the District unless it is registered to do business in the District." D.C. Code § 29-105.02(b). This portion of

[2] *Telephone and Data Systems* involved an earlier iteration of the Foreign Entity Rule. *See* 966 F.2d at 699. But its logic extends to the current Foreign Entity Rule as well as the Individual Rule. *See de Sousa*, 267 F. Supp. 3d at 171.

the code does not define "business," but it does define "[e]ntity" to include a "limited liability company" and to exclude an "individual." *Id.* § 29-101.02(10)(A). The code defines "[f]iling entity" to mean "an entity that is formed by filing a public organic record." *Id.* § 29-101.02(13).

The Foreign Entity Rule covers Shah Investment Group LLC. The Amended Complaint describes Shah Investment Group LLC as a "limited liability company incorporated in Virginia." ECF No. 35 ¶ 2. That makes it "foreign" and a "filing entity"—an LLC formed by filing a "public organic record" in Virginia.[3] And consistent with the common definition of the word, Shah Investment Group was "doing business" in the District of Columbia, insofar as it participated with a consortium of investors "in the purchase of the three condo units to be located" in Northwest D.C. ECF No. 35 ¶ 2, at 8; *Business*, Oxford English Dictionary, sense II.14.a (an activity in "the world of trade and commerce").[4] Shah Investment Group LLC appears to concede that it failed to register. *See* ECF No. 51 at 6. So it has "fail[ed] to comply with the District's door closing statute." *Tel. & Data Sys., Inc.*, 966 F.2d at 699. The D.C. Circuit's decision in *Telephone and Data Systems* dictates that this failure "prevent[s] the exercise of diversity jurisdiction" over claims brought by Shah Investment Group LLC. *Id.* So as the "party asserting subject-matter jurisdiction," Shah

[3] *See* Va. State Corp. Comm'n, Entity Information, "Shah Investment Group LLC," <https://tinyurl.com/2v7nubs9>.

[4] Plaintiffs do not argue that Shah Investment Group LLC fits into an exception to the Foreign Entity Rule, nor do they provide any evidence along these lines. True, "a foreign filing entity . . . shall not be considered doing business in the District under this title solely by reason of . . . [c]onducting an isolated transaction that is not in the course of similar transactions." D.C. Code § 29–105.05(a)(9). But Plaintiffs do not suggest that Shah Investment Group LLC's involvement in the District of Columbia was so limited. Indeed, Plaintiffs allege that Shah Investment Group LLC "was *used* by Shah in the purchase of the three condo units to be located on the subject property"—not that it "was created" for such a purpose. ECF No. 1 ¶ 2 (emphasis added). Moreover, Shah Investment Group LLC was formed in December 2016, more than three years before Plaintiffs got involved in the Georgia Ave real estate gambit. See Va. State Corp. Comm'n, Entity Information, "Shah Investment Group LLC," <https://tinyurl.com/2v7nubs9>.

Investment Group LLC has not carried its burden of "demonstrating it by a preponderance of the evidence." *Aboutalebi v. Dep't of State*, No. CV 19-2605 (TJK), 2019 WL 6894046, at *2 (D.D.C. Dec. 18, 2019).

Plaintiffs try to counter on three fronts. First, they appear to make an argument about the status of sole proprietors under the Foreign Entity Rule. *See* ECF No. 51 at 4–5. But District Title invokes the "sole proprietor" concept in connection with the Individual Rule, not the Foreign Entity Rule. *See* ECF No. 49 at 5. And in any event, the status of sole proprietors under the Foreign Entity Rule is irrelevant here: Shah Investment Group LLC—which is a "registered business entity"—is not a sole proprietorship. Va. Code § 48-50-10.

Second, Plaintiffs argue that "[w]hile the D.C. Circuit has found [the Foreign Entity Rule] to be a bar to diversity jurisdiction, that is inconsistent with the standard espoused by the District of Columbia Court of Appeals." ECF No. 51 at 6. Thus, Plaintiffs appear to invite the Court to defy the D.C. Circuit's directive about a rule of federal jurisdiction. But federal courts have the last word on the scope of federal jurisdiction. "A jurisdictional label under state law does not affect a federal court's subject-matter jurisdiction because state law cannot enlarge or contract federal jurisdiction." *Thompson v. Cope*, 900 F.3d 414, 425 (7th Cir. 2018) (cleaned up); *see Johnson v. District of Columbia*, 552 F.3d 806, 814 n.2 (D.C. Cir. 2008). And *Telephone and Data Systems* is the D.C. Circuit's binding determination about the effect of the District of Columbia's door closing statutes on *federal* jurisdiction. This Court is bound by the D.C. Circuit's interpretation of federal law, so it will follow it. *See in re Korean Air Lines Disaster*, 829 F.2d 1171, 1176 (D.C. Cir. 1987).

Third, Plaintiffs ask for "leave to register with the District of Columbia." ECF No. 51 at 6. Plaintiffs—obviously—do not need leave from this Court to register with the District of

Columbia. But the problem is that under *Telephone and Data Systems*, post-filing registration alone is not enough to establish jurisdiction. In that case, the D.C. Circuit held that failure to comply with the door-closing statutes as a bar on subject-matter jurisdiction—and such jurisdiction "depends upon the state of things at the time of the action brought." *Grupo Dataflux v. Atlas Glob. Grp.*, 541 U.S. 567, 571 (2004); *see Tel. & Data Sys., Inc.*, 966 F.2d at 699. For these reasons, the Court will grant District Title's motion to dismiss Shah Investment Group LLC.

**2. The Individual Rule**

The Individual Rule provides that "[n]o person carrying on, conducting, or transacting business under any trade name shall be entitled to maintain any suit in any of the courts of the District of Columbia until the person has properly completed" the appropriate registration. D.C. Code § 47-2855.03(d). The statute defines "person" as, among other things, "an individual." D.C. Code § 47-2855.01(6). And it defines "[t]rade name" to include "words which suggest additional parties of interest such as 'company,' 'and sons,' or 'and associates.' *Id.* § 47-2855.01(7). All these descriptors match Shah and Shah Investment Group LLC. Shah is "an individual residing in Maryland." ECF No. 1 ¶ 1. And "LLC" is the type of "word[] which suggest[s] additional parties of interest." D.C. Code § 47-2855.01(7); *see de Sousa*, 267 F. Supp. 3d at 171.

Thus, whether Shah is covered by the Individual Rule turns on whether he was "carrying on, conducting, or transacting business" under that trade name. D.C. Code § 47-2855.03(d). But unlike the Foreign Entity Rule, the Individual Rule has a statutory definition of "business" that limits its meaning: "a trade, profession, or activity that provides or holds itself out to provide, goods or services to the general public or to a portion of the general public for hire or compensation in the District of Columbia." *Id.* § 47-2851.01(3); *see* § 47-2855.01(1) (cross-reference). The use

of "means" rather than "includes" suggests that this definition is meant to be "exhaustive" rather than "illustrative." *Samantar v. Yousuf*, 560 U.S. 305, 317 (2010).

Neither party offers up an analysis of the statute's meaning on this point. Still, for several reasons, the Court concludes that Shah's activity does not meet the definition of conducting business. First, Shah—through Shah Investment Group LLC—did not "provide[] or hold itself out to provide" *anything* "to the general public" or some portion of it. D.C. Code § 47-2851.01(3). Rather, Shah alleges that he attempted to use his "holding company" to *purchase* condominiums. ECF No. 35 ¶ 1.[5] Indeed, emails during the real estate transaction allegedly indicate that "'Shah Investment Group LLC' was going to bring in funds for a pre-sale agreement for certain properties." ECF No. 35 ¶ 36.

Second, however the funds that Shah provided to other parties in connection with this purchase might be characterized, they are not "goods" or "services" under the statute. D.C. Code § 47-2851.01(3). True, the statute does not define those terms. *See id.* §§ 47-2855.01, 47-2851.01. But relevant here, "goods" are "[t]hings that are produced for sale; commodities and manufactured items to be bought and sold; merchandise, wears." *Good*, Oxford English Dictionary, sense III.10.a. "Goods" are, in other words, "[t]angible or movable personal property other than money." *Id.*, sense III.9.a. And as for "services," Black's defines a service to mean "the performance of some useful act or series of acts for the benefit of another, usu[ally] for a fee." *Service*, *Black's Law Dictionary* (12th ed. 2024). The funds at issue are neither goods nor services. And for good

[5] A "holding company" is a "trading company which possesses the whole of, or a controlling interest in, the share of capital of one or more other companies." *Holding*, Oxford English Dictionary, sense 1.b. "As innumerable courts have observed, holding companies do not run the entities they own; rather, all holding companies do is 'hold.'" *Johnson v. SmithKline Beecham Corp.*, 853 F. Supp. 2d 487, 493 (E.D. Pa. 2012).

measure, what Shah expected to receive in return was real estate, which is also neither a good nor a service.[6]

Thus, because Shah's activity through Shah Investment Group LLC does not fit into the statutory definition for the Individual Rule, the Rule does not cover Shah. So the Individual Rule does not bar the Court's exercise of subject-matter jurisdiction over Shah's claims.

### 3. The Shareholder Standing Rule

District Title raises another justiciability argument that comes into play because of the Court dismissal of Shah Investment Group LLC. It says that Shah Investment Group LLC, rather than Shah in his individual capacity, is the party that was allegedly harmed by District Title. ECF No. 49 at 7. And because "Shah in his individual capacity has not suffered an injury in fact, this Court lacks standing to hear his claims against District Title." *Id.* At least on this record, that appears so.

A federal court lacks subject-matter jurisdiction when a plaintiff fails to establish standing to litigate their claims. *See Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). In arguing that there is a jurisdictional problem because Shah's company, "rather than Shah in his individual capacity, is the party who was allegedly harmed by District Title," ECF No. 49 at 7, District Title appears to be getting at the "so-called shareholder standing rule." *Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990). Shareholder standing is a doctrine aimed at ensuring that "claims be brought by the proper party." *In re Total Auto Fin. LLC*, 185 F.4th 123, 129 (4th Cir. 2026); *see also Heyer v. Schwartz & Assocs. PLLC*, 319 F. Supp. 3d 299, 305 (D.D.C.

[6] Shah's interaction with District Title cuts the same way. As the Amended Complaint describes it, District Title was "Developers' designated title company to be used by Plaintiffs . . . for the purposes of purchasing the Condo Units." ECF No. 35 ¶ 46. In this interaction, it is District Title that is "providing" a "service," not Shah Investment Group LLC.

2018). The basic idea is that a shareholder cannot "initiat[e] actions to enforce the rights of the corporation." *Franchise Tax*, 492 U.S. at 336. And so "[c]laims of corporate mismanagement must be brought on a derivative basis because no shareholder suffers a harm independent of that visited upon the corporation and the other shareholders." *Cowin v. Bresler*, 741 F.2d 410, 414 (D.C. Cir. 1984). In this way, the doctrine differentiates between an owner's claim and a business's claim. *In re Total Auto*, 185 F.4th at 133. The D.C. Circuit treats shareholder standing as a jurisdictional bar. *See Schum v. F.C.C.*, 617 F. App'x 5, 6 (D.C. Cir. 2015) (per curiam).

Virginia, like most jurisdictions, imposes standing restrictions on shareholders.[7] It "adopts the 'overwhelming majority rule' that 'an action for injuries to a corporation cannot be maintained by a shareholder on an individual basis and must be brought derivatively.'" *In re Total Auto*, (quoting *Simmons v. Miller*, 261 Va. 561, 544 (2001)). That rule applies to LLCs. Generally, "the benefit of an LLC—limited liability—comes with a corresponding burden limiting a member's ability to sue for the LLC's injuries." *In re Total Auto*, 185 F.4th at 134–35; *see* Va. Code § 13.1-1020. So Virginia courts have emphasized that "any claim regarding an LLC's assets must be pursued by, and in the name of, the LLC." *In re Total Auto*, 185 F.4th at 135. And the Virginia Supreme Court has made clear that this rule applies to closely held corporations too. *See Simmons v. Miller*, 261 Va. 561, 576 (2001).

In determining whether the shareholder standing doctrine applies to a claim, "courts look at substance, not labels." *In re Total Auto*, 185 F.4th at 135. Virginia courts "have not laid out a comprehensive test for determining whether a given claim is direct or derivative." *In re Total*

[7] "A federal court sitting in diversity applies the conflict of law rules of the forum in which it sits." *City of Harper Woods Employees' Ret. Sys. v. Olver*, 589 F.3d 1292, 1298 (D.C. Cir. 2009). And for questions of corporate governance and shareholder-management issues, District of Columbia courts apply the law of the state of incorporation. *See id.* Shah Investment Group LLC is a Virginia-registered LLC. *See* ECF No. 35 ¶ 1.

*Auto*, 185 F. 4th at 135. But the Court would be hard pressed to reach any conclusion other than that the shareholder standing doctrine applies to the claims in the Amended Complaint. The "substance" of the allegations show that this lawsuit is "for injuries to" Shah's LLC, not Shah individually. *In re Total Auto*, 185 F.4th at 134. Shah alleges that his LLC "was *used by* Shah in the purchase of the three condo units to be located on the subject property." ECF No. 35 ¶ 2 (emphasis added). Shah's LLC is purportedly listed—albeit under the wrong name—as the buyer on the Sales Agreement, which also discusses the escrow arrangement. ECF No. 35-1 at 72–73. And the Amended Complaint details that "Developers emailed their lawyer, copying Plaintiffs, saying that the 'Shah Investment Group LLC' was going to bring in funds for a pre-sale agreement for certain properties, one of which being the subject Property." ECF No. 35 ¶ 36. Nowhere does Shah appear to dispute that his LLC was the buyer harmed in this transaction. *See* ECF No. 49 at 7; ECF No. 51 at 8.

If that were the end of the story, the Court would dismiss the claims brought by Shah, and thus the entire case. But there is more: in many jurisdictions, "[t]here are two major, often overlapping, exceptions to the general rule that a shareholder cannot sue for injuries to the corporation: (1) where there is a special duty, such as a contractual duty, between the wrongdoer and the shareholder; and (2) where the shareholder suffered an injury separate and distinct from that suffered by other shareholders." 12B William Meade Fletcher et al., *Fletcher Cyclopedia of the Law of Private Corporations* § 5911.[8] So Shah can proceed on his own if he meets the burden of showing

[8] When Virginia courts address shareholder standing, they "have routinely referenced courts across the country and leading corporate-law treatises," including the *Fletcher Cyclopedia of Corporations*. *In re Total Auto Fin. LLC* 185 F. 4th at 141 n.6. Other jurisdictions prefer "simpler frameworks." *In re Total Auto*, 185 F.4th at 135. Delaware courts have held, for example, that whether a shareholder can pursue a direct claim, rather than derivative claim, "'must turn solely on the following questions: (1) who suffered the alleged harm (the corporation or the suing

that he was owed "a special duty" or if he "suffered an injury separate and distinct from that suffered by other shareholders." *Id.*; *see Kokkonen*, 511 U.S. at 377 (burden). For the reasons explained below, at least as things now stand, Shah has not done so.

Shah identifies nothing approaching a "separate and distinct" injury, nor does he try to defend against District Title's shareholder standing argument on that basis. Indeed, Shah is not anything like "a shareholder who alleges that members of the board have refused to return stock pledged to secure a debt" or "a shareholder-employee who contests his discharge from employment" or any other type of shareholder suffering a "distinct personal injury." *Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158, 160 (7th Cir. 1996).

In addition, although it is a closer call, on this record, Shah also has not shown that he can invoke the "special duty" exception. Without Virginia cases defining the contours of that exception, the Court looks elsewhere. *See In re Total Auto*, 185 F. 4th at 135 n.6. Under North Carolina law, for example, "[a] special duty exists where the third-party wrongdoer violates a duty owed directly to the equity holder." *In re Total Auto*, 185 F. 4th at 135 (invoking North Carolina law in a Virginia case). Put another way, to allege a "special duty," a plaintiff must plead facts sufficient to show that a defendant owed "*distinct* duties *personal* to him," rather than duties to the corporation. *Rivers v. Wachovia Corp.*, 665 F.3d 610, 617–18 (4th Cir. 2011) (emphasis added); *accord*

---

stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?'" *In re Total Auto*, 185 F.4th at 135 (quoting *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004)). As the Fourth Circuit has recently explained in a diversity case applying Virginia law, "Virginia has expressly reserved judgment on whether to adopt" to Delaware test. *In re Total Auto*, 185 F.4th at 135. The Delaware test is a somewhat awkward fit for this case—Shah is the only member of his LLC and he would obviously not bring a derivative claim against *himself*. But in any case, for the reasons discussed, Shah runs into trouble under the Delaware test because the "substance" of Shah's allegations suggest Shah's LLC, not Shah individually, "suffered the alleged harm" in this transaction. *In re Total Auto*, 185 F.4th at 135; *see, e.g.*, ECF No. 35 ¶ 2; ECF No. 35-1 at 72–73.

*Sacks v. Am. Fletcher Nat. Bank & Tr. Co.*, 258 Ind. 189, 194 (1972) ("A personal cause of action arises when there is a breach of a duty owed specially to the stockholder separate and distinct from the duty owed to the corporation.").

Similarly, District of Columbia courts have held that an individual suit can be appropriate when "the defendant owes a duty to the individual plaintiffs other than as shareholders." *Williams v. Mordkofsky*, 901 F.2d 158, 164 (D.C. Cir. 1990). As the D.C. Circuit once described it, the exception is triggered "where the allegedly wrongful conduct violates a duty to the complaining shareholder independent of the fiduciary duties owed that party along with all other shareholders." *Cowin*, 741 F.2d at 415. "[S]pecial duty" cases often involve facts unlike the situation here: "where the defendant's misrepresentations to the individual plaintiff predated the shareholder-officer relationship and induced the plaintiff to become a shareholder" or where there is an issue involving "special protection to minority shareholders in a closely held corporation." *Rivers*, 665 F.3d at 617 (collecting cases). Another example of a "special duty" is created by a "personal guaranty for a loan to a corporation." *Sacks*, 258 Ind. at 195.

Shah argues that District Title owed him a duty because he "personally entrusted his funds to District Title." ECF No. 51 at 8 (citing ECF No. 35 ¶¶ 49, 104–09, 136). And it is true that an "escrow agent owes a fiduciary duty to those who transfer funds into an escrow." *Kim v. DP Cap. LLC*, No. CV 23-1101 (TJK), 2024 WL 4253168, at *4 (D.D.C. Sept. 20, 2024) (internal quotations omitted); *see* ECF No. 51 at 8. Under District of Columbia law—which governs the fiduciary duty issue, *see Bode & Grenier, LLP v. Knight*, 808 F.3d 852, 864 (D.C. Cir. 2015)—a "fiduciary relationship" is a "flexible" concept that "embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in, and relies upon, another." *Kim*, 2024 WL 4253168, at *4 (internal quotations omitted). "Whether a fiduciary relationship exists is a

'fact-intensive question' that focuses on 'the nature of the relationship, the promises made, the type of services or advice given and the legitimate expectations of the parties.'" *Goodrich v. Bank of Am. N.A.*, 136 F.4th 347, 354 (D.C. Cir. 2025).

Some of the alleged facts here suggest that District Title may have owed a duty to Shah. Start with Shah's "expectations." *Goodrich*, 136 F.4th at 354. As the Amended Complaint describes it, "*Shah* sen[t] funds to District Title." ECF No. 35 ¶ 104 (emphasis added). And in sending those funds, "*Shah* emailed District Title" to say that "you have to hold *my money* in escrow under *my name Nasir Shah* and have to wait until I give you authorization to disburse *my money* and if the deal doesn't work out then *my money* has to be returned to me no later then 08/03/2020 without any hold up or authorization from anyone but *only me (meaning Nasir Shah)*." *Id.* (emphasis added).

On the other hand, at this point, Shah does not meet his burden of showing that District Title owed "*distinct* duties *personal* to" him, as opposed to Shah Investment Group LLC. *Rivers*, 665 F.3d at 618 (emphasis added). In other words, Shah does not allege or explain how any duty District Title owed to him was different from the duty it owed to his LLC. Under District of Columbia law, "[e]scrow agents owe a fiduciary duty of care to both buyer and seller in a real estate transaction." *Cap. River Enters., LLC v. Abod*, 301 A.3d 1234, 1242 (D.C. 2023). And as mentioned above, nowhere does Shah appear to dispute that his LLC was the buyer in this transaction. Recall that Shah's LLC is listed as the buyer on the Sales Agreement, which also discusses the escrow arrangement. ECF No. 35-1 at 72–73. And while Shah invokes paragraph 49 of the Amended Complaint, that paragraph cites a "Funds Transfer Request Authorization" which appears to detail a transaction where "SHAH CORPORATION"—not Shah—wired money to District Title. ECF No. 51 at 8; ECF No. 35 ¶ 49; ECF No. 35-1 at 82.

District Title fails to make things easier by misstating the allegations in the Amended Complaint several times. For example, District Title argues that "[b]ased on Plaintiffs' allegations," at a certain point, "Shah Investment LLC 'became the sole and rightful owner of the Condo Units in fee simple.'" ECF No. 49 at 7 (quoting ECF No. 35 ¶ 63). And District Title states that "[p]ursuant to the 'New Construction Pre-Sales Agreement,' the buyer, SIG, 'provided $545,000 dollars to District Title for the Closing." *Id*. (quoting ECF No. 35 ¶ 47). But the allegations in the Amended Complaint are different. In paragraph 63, the Amended Complaint alleges that "Plaintiffs"—not just "Shah Investment LLC"—"became the sole and rightful owner of the Condo Units in fee simple." ECF No. 35 ¶ 63. And paragraph 47 alleges that "Shah"—not "SIG"—"provided $545,000 dollars to District Title for the Closing." ECF No. 35 ¶ 47.[9]

All told, and despite the Court's skepticism, the Court will give Shah a chance, if he chooses, to try to file another amended complaint that passes muster to provide the Court jurisdiction. The Court does so because of Shah's presumed lack of focus on the "special duty" and "separate and distinct injury" exceptions when drafting the Amended Complaint, and the parties' failure to adequately address the legal contours of these exceptions in their briefing. So the Court will dismiss the Amended Complaint, but not the action, and allow Shah the opportunity to amend. *See Attias v. Carefirst, Inc.*, 865 F.3d 620, 624 (D.C. Cir. 2017); *Montgomery v. McDonough*, 682 F. Supp. 3d 1, 19 (D.D.C. 2023); Fed. R. Civ. P. 15(a).

[9] District Title also points to *Shah v. Saxena*, a separate case in which the Court held that the "'shareholder standing' doctrine" meant that Shah did not have standing to recover from a lawyer retained in connection with this same transaction. No. 23-cv-3127 (TJK), 2025 WL 1865034, at *6–7 (D.D.C. July 7, 2025). But there, the Court relied on precedent that applied the shareholder standing doctrine to an assumed attorney-client relationship, barring a suit filed by a client against an attorney to recover for an injury that the Court held was properly the corporation's. *See Williams v. Mordkofsky*, 901 F.2d 158, 164 (D.C. Cir. 1990). And here, at least for now, both the alleged facts and the applicable law relevant to the relationship—and potential "special duty"—linking Shah and District Title are murkier.

**B. District Title's Motion to Dismiss under Rule 12(b)(7)**

In District Title's other motion, it argues for dismissal because of Plaintiffs' alleged failure to join necessary parties. It argues that DP Capital, LLC, WCP Fund I, LLC, WCP Georgia Ave NW LLC, Charles Paret, 4910 Georgia Ave Holdings LLC, and Coloma River Holdings, LLC must be joined, or the case must be dismissed under Rule 19. *See* ECF No. 46 at 7–8. Because the Court has dismissed the Amended Complaint, it will deny this motion as moot for now. If Shah files another amended complaint, District Title may file a renewed motion.

## IV. Conclusion and Order

For all the above reasons, it is hereby **ORDERED** that District Title's Motion to Dismiss for Lack of Subject-Matter Jurisdiction, ECF No. 49, is **GRANTED**. It is further **ORDERED** that the Amended Complaint, but not the case, is **DISMISSED**. It is further **ORDERED** that District Title's Motion to Dismiss for Failure to Join Required Parties, ECF No. 46, is **DENIED** as moot. It is further **ORDERED** that Shah—but not Shah Investment Group LLC—may file an amended complaint that attempts to cure the deficiencies identified above by November 2, 2026. If Shah does not do so, the Court will dismiss the case as well.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 30, 2026